**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| LG Electronics Inc., et al. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 1:21-cv-02600 |
| v. | ) | |
| | ) | Honorable Mary M. Rowland |
| Partnerships and Unincorporated | ) | |
| Associations Identified in Schedule A | ) | **FILED UNDER SEAL** |
| | ) | |
| Defendants. | ) | |

---

## DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION FOR RULE 11 SANCTIONS

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.    BACKGROUND ........................................................................................................ 3

    A.    LG swept the Ecopure Defendants into this Schedule A case by representing they were unknown, unsafe knock-off artists who would "close up shop," all to get a secret injunction and asset freeze with no chance respond. ............................................... 3

    B.    When the Ecopure Defendants contacted LG about this case, LG pretended not to know who they were, and withheld the pleadings and TRO filings. .................................... 5

    C.    The Ecopure Defendants move to dismiss and sever. ................................................... 6

    D.    LG ignores all the evidence revealed throughout the case and renews its motion for injunction. ............................................................................................................................ 6

III.    STANDARD OF LAW ................................................................................................ 8

    A.    Rule 11 limits parties to claims and allegations supported by a reasonable inquiry and requires dropping claims and allegations upon learning they are false. ....................... 8

    B.    Rule 11 gives the Court wide to discretion to sanction parties that make or refuse to abandon claims that are meritless or not based on a reasonable investigation. .................. 9

IV.    THE ECOPURE DEFENDANTS ARE ENTITLED TO SANCTIONS UNDER RULE 11    9

    A.    The Ecopure Defendants were only joined in this Schedule A case under a false pretense that they were unknown and part of some "manufacturing consortium." ......... 11

    B.    LG secured a secret TRO by falsely representing that it did not know the Ecopure Defendants and that they were a flight risk. ........................................................................ 14

    C.    LG continues to falsely claim that Ecopure Products are unsafe ............................... 17

    D.    Sanctions are warranted for violating Rule 11 ............................................................ 19

V.    CONCLUSION ............................................................................................................ 20

4826-0985-9582, v.4

# **TABLE OF AUTHORITIES**

**Cases**

*Capuano v. Consol. Graphics, Inc.*, 2007 U.S. Dist. LEXIS 52664 (N.D. Ill. July 20, 2007)....... 8

*Dempsey v. Nathan*, No. 14 C 0812, 2016 WL 11431197 (N.D. Ill. Oct. 11, 2016)...................... 8

*Divane v. Krull Elec. Co.*, 319 F.3d 307 (7th Cir. 2003) ................................................................ 9

*In re TCI Ltd.*, 769 F.2d 441, 442 (7th Cir.1985) ........................................................................... 8

*McGreal v. Vill. Of Orland Park*, 928 F.3d 556 (7th Cir. 2019) ..................................................... 8

*Montano v. City of Chicago*, 535 F.3d 558 (7th Cir. 2008)............................................................ 9

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Cont'l Illinois Corp.*, 113 F.R.D. 637 (N.D. Ill. 1987) .............................................................................................................................................. 1, 8

*Oakley Inc. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 21 C 536, 2021 WL 308882 (N.D. Ill. Jan. 30, 2021) .................................................... 2, 4

*Portman v. Andrews*, 249 F.R.D. 279 (N.D. Ill. 2007) ............................................................... 17

*Raskin, S.A. v. Datasonic Corp.*, No. 86 C 7594, 1986 WL 12598 (N.D. Ill. Nov. 5, 1986)..... 8, 9

*Schilling v. Walworth Cty. Park & Plan. Comm'n*, 805 F.2d 272 (7th Cir. 1986) .................. 9, 19

**Statutes**

35 U.S.C. § 299(a)(1).................................................................................................................... 12

**Rules**

Fed. R. Civ. P. 11 ........................................................................................................................... 8

Fed. R. Civ. P. 11(b) ................................................................................................................... 1, 8

Fed. R. Civ. P. 11(c)(1).................................................................................................................. 9

4826-0985-9582, v.4

## I.    INTRODUCTION

LG's pleadings and motions not only relied on baseless allegations about the Ecopure

Defendants to secure an *ex parte* injunction under the Court's Schedule A procedure, but LG

repeated these allegations in subsequent filings after it was clear they were false. This is

precisely what Rule 11 prohibits. Under Rule 11, every pleading, motion, or other paper filed

with the Court acts as certification that the facts alleged are not being asserted for an improper

purpose and have or are likely to have evidentiary support. Fed. R. Civ. P. 11(b). LG not only

ignored this standard but turned it on its head. Rather than make the "thoughtful inquiry"

required under Rule 11, LG misrepresented what it knew about the Ecopure Defendants,

including basic facts about their existence, who makes their products, and verifiable safety

certifications. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Cont'l Illinois Corp.*, 113 F.R.D.

637, 643 (N.D. Ill. 1987). Equally troubling, even after the actual facts came to light, LG and its

counsel never critically assessed its false allegations. Instead, it repeated them in an attempt to

secure another injunction when the first was dissolved. All of this begs the simple question:

why? Because LG had no other option to orchestrate a secret, uncontested shut down of the

Ecopure Defendants' Amazon stores—a competitor LG knew existed, knew sold safety certified

products, and knew was not selling counterfeit goods. Rule 11 makes clear that parties cannot

cavalierly allege anything they want as a means to an end. The Court should find that LG

violated Rule 11 and impose appropriate sanctions.

LG had a singular purpose when suing the Ecopure Defendants—to enjoin and freeze the

Amazon assets of "known" competitors without giving them notice and a chance to respond.

Instead of contacting the Ecopure Defendants or working through Amazon to address a patent

issue like it had with them in the past, LG and its counsel chose to lump the Ecopure Defendants

into a disparate group of water filter sellers found on Amazon, seek sweeping *ex parte* relief, and

1

game the Court's Schedule A process. Schedule A cases are used to enjoin rank copyists of
unknown origin (usually foreign) selling counterfeit goods online. *See Oakley Inc. v. The
Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 21 C 536, 2021
WL 308882, at *1 (N.D. Ill. Jan. 30, 2021). In this Court, that process also allows for service to
be perfected on Chinese parties with a simple email. *Id.* While an injunction under Schedule A
certainly fit LG's goal, it did not, however, fit LG's case against the Ecopure Defendants.

To obtain its secret injunction, LG had to justify joining the Ecopure Defendants with
different defendants selling different products despite the Patent Act's "same product" rule,
justify *ex parte* relief and email service to companies it knew, and justify that a simple patent
issue was causing immediate and irreparable harm. Rather than assess whether these
justifications reasonably existed, LG simply made up facts:

- To join the Ecopure Defendants, LG alleged the Ecopure Defendants sold
  knockoffs nearly identical to the other co-defendants that were made by an unknown,
  shadowy manufacturer or "consortium" of manufacturers in China. In reality, LG knew
  the Ecopure Defendants, knew Ecopure manufactured their own products, and had even
  communicated with them (and their counsel) in the past,

- To justify *ex parte* actions and email service, LG alleged that it had no idea who
  owned and operated the Ecopure Defendants' Amazon stores and that they would close
  up shop when they learned of a patent issue. In reality, LG knew the Ecopure Defendants
  by name, admitted they were a "███████████," and had resolved patent disputes
  with them (and undersigned counsel) in the past, and

- To show irreparable harm and justify an injunction, LG repeatedly alleged that the
  Ecopure Defendants were selling products that lacked safety certifications and were not

2

safe for customers. In reality, LG had no basis for safety concerns about the Ecopure Defendants' products and could have easily verified that they had NSF safety certifications.

While these allegations alone suffice to show that LG violated Rule 11 in its pleadings, sever opposition, and motions for injunctive relief, LG's responses to having its false allegations exposed removes all doubt that sanctions are appropriate. When the Ecopure Defendants pointed out that joinder was not appropriate under the Patent Act and LG's allegation about a "consortium" of manufacturers was untrue, LG simply ignored its allegation and sought consolidation. Similarly, when confronted with the Ecopure Defendants' clear safety certifications early in the case, LG ignored the issue and *repeated the allegation* in a renewed motion to for preliminary injunction. Worse, when LG's own witnesses ███████████████ ████████████████████████████████████████████████████████████, the only explanation that LG could offer for forcing the Ecopure Defendants into this Schedule A case was ██████████" ECF No. 175, at 27.

LG did not have a basis to make the allegations it made to join the Ecopure Defendants in a Schedule A case or to claim irreparable harm based on safety concerns. When the reality of that became clear, LG not only failed to reassess the reasonableness of its claims and relief, it *doubled down on them*. This is the essence of what Rule 11 aims to prevent. The Court should find that LG violated Rule 11 and impose the requested or other appropriate sanctions.

## II.    BACKGROUND

### A.    LG swept the Ecopure Defendants into this Schedule A case by representing they were unknown, unsafe knock-off artists who would "close up shop," all to get a secret injunction and asset freeze with no chance respond.

On May 13, 2021, LG Electronics Inc. and LG Electronics Alabama, Inc. (collectively, "LG") filed a sealed "Schedule A" complaint against sixteen defendants including Qingdao

Ecopure Filter Co., Ltd. ("Ecopure"), Qingdao Maxwell Commercial and Trading Co. Ltd. ("Maxwell") and Qingdao Uniwell Trading Co., Ltd. ("Uniwell").[1] "Schedule A" lawsuits, which have become "commonplace" in the Northern District of Illinois, provide a convenient means for holders of IP rights, typically trademarks, to file suits naming dozens or even hundreds of counterfeiters whose actual identities and locations are unknown to the rights holder (because they have used assumed names) without "tipping off" the defendants that a lawsuit has been filed. *Oakley Inc.*, 2021 WL 308882, at *1. Once the Schedule A lawsuit is filed, the plaintiff next moves *ex parte* for entry of a temporary restraining order ("TRO") that bars further allegedly infringing sales and freezes any assets held in the defendants' accounts with online banks or retailers. Once the court enters a TRO, the plaintiff serves the online bank or retailer (e.g., Amazon) with the TRO to freeze all of the defendants' assets and take other steps to effectuate the TRO's terms. ***Only then*** does the plaintiff serve notice on the defendants (typically by email). *See Id.*

To include the Ecopure Defendants into this Schedule A case, and join them with the other defendants, LG alleged in its complaint that it did not know the Ecopure Defendants, ECF No. 1, at ¶ 3, that the Ecopure Defendants sourced their products from a secret manufacturing consortium, *id*. at ¶ 9, and that they were going to "close up shop" and hide as a result of the lawsuit. *Id*. at ¶¶ 19–21. LG then immediately filed for a TRO, taking these allegations a step further with declarations from LG employees and one of LG's outside attorneys providing statements endorsing these allegations. ECF No. 8, Ex. C Skoyles Decl., at ¶¶ 14-17. LG claimed that the Ecopure Defendants' products were unsafe and posed a public health risk. ECF No. 8, at 10. LG further requested permission to serve by email, which it claimed was necessary because it

---

[1] Ecopure, Maxwell, and Uniwell are collectively referred to as "the Ecopure Defendants."

could not locate the defendants. ECF No. 8, at 36–37. The Court took LG's allegations at face value and granted the TRO and the request for email service. ECF Nos. 20, 21.

**B. When the Ecopure Defendants contacted LG about this case, LG pretended not to know who they were, and withheld the pleadings and TRO filings.**

On or about June 6, 2021, Ecopure, Maxwell, and Uniwell each received an account messages from Amazon stating that their seller account had be placed "on hold" as a result of "a Temporary Restraining Order issued by a federal court." ECF Nos. 55-2, 55-3, 55-4. The notices instructed the Ecopure Defendants to contact Aidan Skoyles, LG's counsel of record in this case, to "resolve the dispute." On June 7, 2021, counsel for Ecopure contacted Mr. Skoyles, requesting the Complaint, temporary restraining order, and related materials and attached the Amazon hold messages. ECF No. 55-5. Later that evening, Mr. Skoyles responded that Ecopure was not a named defendant and requested information on how Ecopure related to the matter even though Mr. Skoyles' own declaration, submitted to the Court in support of the TRO, expressly ██████ ████████████████████████████████████████████████████████████████████████ ████████████████████. ECF No. 16-7, at ¶¶ 27–32.

On the morning of June 8, 2021, Ecopure's counsel again contacted Mr. Skoyles, identified that Ecopure owned WaterdropDirect (its Amazon storefront), and requested the case materials and a call. ECF No. 55-, at 4–5. Despite the urgent request, LG did not respond. Instead, LG moved *ex parte* that very day to extend the temporary restraining order, ***without notice to Ecopure or its counsel***. ECF No. 22. The day after moving to extend the order, on June 9, 2021, counsel for LG finally responded, but still failed to provide the case materials, and requested an agreement regarding acceptance of service before LG's counsel would provide the sealed court filings. ECF No. 55-, at 3–4. Counsel for Ecopure promptly agreed to LG's service demands and again asked for the case materials. *Id.* at 3. Counsel for LG again failed to respond,

waiting instead for the Court to grant LG's motion to extend the temporary restraining order.
Only after, on June 10, did LG's counsel finally provided the sealed case materials. *Id.* at 1.

      After the Ecopure Defendants entered the case, they filed a motion to dissolve the TRO.
ECF No. 55. As part of that motion, the Ecopure Defendants included correspondence between
the parties a year before the lawsuit showing that LG knew the Ecopure Defendants and their
counsel, and that the parties had amicably resolved past intellectual property disputes. ECF No.
55 Ex., 9-11. The Ecopure Defendants also provided proof that their filters were NSF-certified
for safety. ECF Nos. 55-16, 55-17, 55-18, 55-19. The Court promptly held a hearing a hearing
and dissolved the TRO. ECF No. 68.

### C. The Ecopure Defendants move to dismiss and sever.

      The Ecopure Defendants also moved to dismiss the case on basis that jurisdiction is
improper because they have no contacts in this District. ECF No. 67. Shortly thereafter, the
Ecopure Defendants then moved to sever the case (or dismiss) due to improper joinder under 35
U.S.C. § 299. The Ecopure Defendants did so because they manufacture their own products and
do not sell the same product as any other defendants. ECF No. 111. LG *conceded that joinder
was improper* (the entire basis for including the Ecopure Defendants in the Schedule A case) and
instead asked the Court to ignore the mistake and apply its discretion to consolidate the case.
ECF No. 139. LG made no effort to address its discredited "consortium" allegation in the
Complaint.

### D. LG ignores all the evidence revealed throughout the case and renews its motion for injunction.

      LG then pressed on and filed a second, emergency motion for injunction against a
different set of defendants. ECF No. 86. The Court promptly denied that motion on the grounds
that "evidence does not establish that LG will suffer irreparable harm" and the "defendants'

country of origin alone is insufficient to establish an irreparable harm." ECF No. 100, at 7–8. Instead of reassessing its case in light of all the information the Ecopure Defendants provided, LG filed another "renewed" motion for injunction against the Ecopure Defendants as well as the other defendants. ECF No. 103-1 ("Renewed Motion"). The Renewed Motion relies on the same declarations as the initial TRO and added allegations regarding irreparable harm. Critical to this motion, LG doubled down on the misrepresentations it made initially in this case that Ecopure's products were unsafe and lack certification under the NSF. ECF No. 103, at 3, 5, 8.

Discovery relating to the Renewed Motion gutted LG's claims and revealed that they had been baseless from the start. LG's witnesses testified that ██████████████████ ████████████, Ex. 1, Hansen Dep., 140:10-13; Ex. 2, Rinker Dep., 55:20-23 (attached to Ex. A, Declaration of Todd R. Tucker), ██████████████, Ex. 2, 108:3-21, ██████████████████████, Ex. 1, 210:7-10, and ██████████████████████████████. Ex. 2, 120:9-21. And despite ***staking its entire irreparable harm case on the allegation that the Ecopure Defendants' filters were unsafe***, LG completely abandoned the issue in its reply brief in the face of indisputable, publicly available documents clearly showing that ***the Ecopure Defendants' filters are NSF-certified***. ECF No. 175.

In the end, LG forced the Court and the Ecopure Defendants to spend considerable time and expense to address an improper Schedule A case that LG's witnesses admit never should have been brought. LG's continued pursuit of this Schedule A case and an injunction based on facts and allegations that have been proven demonstrably false warrants sanctions under Rule 11.

### III.    STANDARD OF LAW

#### A.    Rule 11 limits parties to claims and allegations supported by a reasonable inquiry and requires dropping claims and allegations upon learning they are false.

An attorney who files a pleading, motion or other paper with the Court certifies that a reasonable inquiry was conducted to determine that it was nonfrivolous, warranted under the law, supported by facts, and not presented for any improper purpose. Fed. R. Civ. P. 11(b). Rule 11 prohibits attorneys and parties from making false or unsupported representations to the court and requires litigants to "stop-and-think" before initially making legal or factual contentions. *Capuano v. Consol. Graphics, Inc.*, 2007 U.S. Dist. LEXIS 52664, at *5 (N.D. Ill. July 20, 2007); *Dempsey v. Nathan*, No. 14 C 0812, 2016 WL 11431197, at *3 (N.D. Ill. Oct. 11, 2016).

Rule 11 also imposes obligations on litigants that extend long after filing—a party cannot continue to pursue claims "after learning that they cease to have any merit. Fed. R. Civ. P. 11 Advisory Committee Notes; *see also Dempsey*, 2016 WL 11431197, at *3. The duty to conduct a reasonable investigation in the law and facts supporting a party's claims ***compounds*** at each stage of litigation. *See McGreal v. Vill. Of Orland Park*, 928 F.3d 556, 560 (7th Cir. 2019). This Court has imposed sanctions on a plaintiff for "dumping" a party into a case, without "the kind of pre-filing thoughtful inquiry . . . required by Rule 11," in an attempt to "sweep up all potentially involved actors." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*, 113 F.R.D. at 643. In that case, the Court found that the Plaintiff's "file first and think later" approach to joinder warranted sanctions. *Id.* (quoting *In re TCI Ltd.*, 769 F.2d 441, 442 (7th Cir.1985)).

This Court has also found Rule 11 violated where a party's "motion for an emergency TRO was not 'well grounded in fact' and caused 'unnecessary delay' and needless expense. *Raskin, S.A. v. Datasonic Corp.*, No. 86 C 7594, 1986 WL 12598, at *1 (N.D. Ill. Nov. 5, 1986). In *Raskin*, the plaintiff told the Court that it was in "immediate danger" of losing all its

equipment, but never told the Court that the equipment was being held in trust pending resolution of the lawsuit. *Id.* The Court granted the TRO under the false belief that the danger was real, and then later imposed sanctions upon learning the plaintiff knew there never was any such danger. *Id.*

**B. Rule 11 gives the Court wide to discretion to sanction parties that make or refuse to abandon claims that are meritless or not based on a reasonable investigation.**

If a court determines that Rule 11 has been violated, it "may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). The Court "enjoys broad discretion in setting a sanction award that it believes will serve the deterrent purpose of Rule 11." *Divane v. Krull Elec. Co.*, 319 F.3d 307, 314 (7th Cir. 2003). "The sanction imposed should be proportionate to the gravity of the offense." *Montano v. City of Chicago*, 535 F.3d 558, 563 (7th Cir. 2008). Sanctions are often an award of fees that directly resulted from the sanctionable conduct. *Divane*, 319 F.3d at 314. In "particularly severe" cases, it is also within the Court's discretion to dismiss the case. *Montano*, 535 F.3d at 563. Dismissal is warranted where there is "a clear record of delay or contumacious conduct." *Schilling v. Walworth Cty. Park & Plan. Comm'n*, 805 F.2d 272, 275 (7th Cir. 1986).

**IV.    THE ECOPURE DEFENDANTS ARE ENTITLED TO SANCTIONS UNDER RULE 11**

Sanctions under Rule 11 are warranted in this case. LG made unreasonable and unsupported allegations about the Ecopure Defendants that its own employees have repudiated, to bring a Schedule A case and obtain injunctive relief that was improper. At best, LG failed to investigate the statements LG and its attorneys made to the Court; at worst, it made those statements knowingly. In either event, LG's conduct fell below the Rule 11 standard. While that alone merits sanctions, LG again violated Rule 11 when it became clear that the underpinnings of its Schedule A case and bid for injunctive relief were not true in light evidence the Ecopure

9

Defendants provided and LG's witnesses' admissions. Despite these clear warning signs, LG

failed to reassess its case, pressed on with an improper Schedule A proceeding, and repeated

untrue allegations in a renewed preliminary injunction motion. This too violates Rule 11.

The misrepresentations in LG's pleadings and motions lie at the heart of the proceeding

to date:

- To secure Schedule A treatment and *ex parte* relief, LG told the Court that the Ecopure Defendants were unknown to LG prior to this case, were hiding their identity to avoid liability, and would close up shop and run as soon as they learned of the lawsuit, despite LG having recently resolved two IP disputes between the parties with their same counsel. *See* ECF No. 1, at ¶ 11; ECF No. 4, at 1; ECF No. 4, at 1; ECF No 1, at ¶¶ 10, 11, 19-21; ECF No. 8, 1, 2, 7, 12, 27, 28, 30, 32-33, and 36; ECF No. 8, Ex. C Skoyles Decl. at ¶¶ 12, 15-16; and ECF No. 27, at 5, 6.

- To secure joinder under Schedule A and to further a bid for injunctive relief, LG told the Court that the Ecopure Defendants do not make their own products, that their products were identical to LG's and knock-offs despite its witnesses admitting that ███████████ ████████████████████████ *See* Ex. 1, 210:7-10; ECF No. 16-6, at ¶ 7 (Hansen Declaration); ECF No. 1, at ¶¶ 11, 23; ECF No. 8, at 1, 3, 6, 7; ECF No. 16-5, at ¶ 8; and ECF No. 16-6, at ¶¶ 15, 16.

- To secure injunctive relief and to manufacture irreparable harm in support of its multiple requests for injunctive relief (including the one currently pending), LG told the Court that the Ecopure Defendants' products are unsafe, substandard and not certified, ignoring that its witnesses admitted to ████████████████████████████ ██████████ and ignoring publicly available records that identify the Ecopure Defendants' filters as safe and certified. *See* ECF No. 8, at 10; ECF No. 103, at 3, 5, 8; and ECF No. 103-1, at 5–6.

LG's behavior in continuing to advocate claims it knew had no factual basis has directly

caused the Ecopure Defendants to incur significant legal expense. This includes using false

pretenses to lump the Ecopure Defendants into a Schedule A case, securing secret injunctive

relief without opposition, freezing Amazon accounts, and LG's repeated attempts to secure a

new injunction. LG based its Schedule A case against the Ecopure Defendants on false

allegations. Rather than thoughtfully reassess its position in the face of clear contradicting

evidence, it dug in further. This is precisely the kind of litigation misconduct Rule 11 aims to curtail. As such, the Ecopure Defendants respectfully request that the Court find LG violated Rule 11 and award sanctions, including recovery of fees and dismissal of the case.

### A. The Ecopure Defendants were only joined in this Schedule A case under a false pretense that they were unknown and part of some "manufacturing consortium."

| LG Statements to Court | LG Witness Admissions |
|---|---|
| "Defendants have participated with an unknown manufacturer or consortium of manufacturers" ECF No. 1, at ¶ 11.<br><br>"Each Defendant sells at least one of just three trivial variations of the same product design, and each variation likely originated from a single manufacturer or consortium of manufacturer located in China." ECF No. 8, at 3. | [redacted]<br><br>[redacted]<br>[redacted]<br><br>Ex. 1, 209:16-210:10. |

LG used the above statements in its Complaint and TRO to gain access to the unique Schedule A proceeding even though LG's witness, Dave Hansen, testified that [redacted] [redacted]. ECF No. 1, at ¶¶ 9, 11,14; ECF No. 8, at 3; ECF No. 8, Ex. C Skoyles Decl., ¶ 14. This misrepresentation was critical. LG made this misrepresentation to avoid the dictates of 35 U.S.C. 299 in order to lump Ecopure in with the other defendants in this Schedule A proceeding. ***Without this misrepresentation, the Ecopure Defendants could not be part of this Schedule A case***. Accordingly, this misrepresentation allowed LG to quickly and secretly freeze the Ecopure Defendants' assets—to effectively cripple a known competitor.

By statute, joinder for patent cases is proper only where a "right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using,

importing into the United States, offering for sale, or selling of the same accused product or

process." 35 U.S.C. § 299(a)(1). Thus, without any factual basis, and on at least six separate

occasions in signed papers filed with the Court, LG represented that the Ecopure Defendants

sourced their product from a secret "manufacturing consortium" with the other defendants in this

case. ECF No. 1, at ¶¶ 9, 11, 16; ECF No. 8, at 2, 3, and 6; *see also* ECF No. 8 Ex. C Skoyles

Decl., ¶ 14.

LG knew this was false, but absent this knowing misrepresentation, there was no way for LG

and its counsel to make this proceeding a "Schedule A" case. LG knew the Ecopure Defendants'

product design was different from the product designs of the other defendants, ECF No. 1, at 3,

knew that ███████████████████████, Ex. 1, 210:7-10, and ████████████████

████████████████████████████████████████████████████████

████████. Ex. 1, 209:16-212:11; Ex. 2, 128:8-129:14.

When the Ecopure Defendants moved to sever because joinder was never proper, LG did not

even attempt to justify the false statements in their pleadings and motions, let alone address

them. LG admitted joinder was essentially improper and instead asked the Court to consolidate

the cases. ECF No. 139, at 1 ("LGE does not oppose severing Ecopure in this case.") Meanwhile,

LG continued to press on without acknowledging that its "joinder" position against the Ecopure

Defendants rests entirely on misrepresentation.

| LG Statements to Court | LG Witness Admissions |
|---|---|
| ██████████████████████ ██ ████████ ██████████████ ██████ █████████ ██████ ████████ ████████████████ ECF No. 8, at 10 (quoting Ex. 5 at 2). | ████████████████████████ ████████████ █ █ █ |



Ex. 2, 69:15–70:5.

"LGEAI has become aware that unauthorized sellers, including Defendants, are selling identical or nearly identical copies ███ ████ online. Products identified in Schedule A are among them." ECF No. 16-6, at ¶ 7 (Hansen Declaration).

Ex. 1, 82:8-20.

LG's shoehorning the Ecopure Defendants into this Schedule A case was premised on several baseless statements that the Ecopure Defendants' products are identical, copycat, counterfeits and knock-offs. ECF No. 1, at ¶¶ 11, 23; ECF No. 8, at 1, 3, 6, 7; ECF No. 16-5, at ¶ 8; ECF No. 16-6, at ¶¶ 15, 16. Internally, however, LG knew ████████████████. Ex. 2, 69:10–70:5, 104:7–13, 157:21–158:1. While LG provided a declaration comparing the Ecopure products to LG's own, filed in support of both the TRO and Renewed Motion, LG's hand-picked declarant later admitted that ████████████████████. Ex. 1, 54:24–55:24, 82:8–84:22.

13

LG also knew its assertion that the Ecopure Defendants were working with an "secret consortium of manufacturers" was entirely baseless and lacking in evidentiary support. It knew the Ecopure Defendants' products were different and not knock-offs. But it based joinder, and its Schedule A case request, on these allegations to get secret, *ex parte* injunctive relief against the Ecopure Defendants. Sanctions are warranted.

**B. LG secured a secret TRO by falsely representing that it did not know the Ecopure Defendants and that they were a flight risk.**

| LG Statement to Court | LG Witness Admission |
|---|---|
| "Defendants are individual and business entities whose true names, identities, and/or address are unknown to the Plaintiffs." ECF No. 1, at ¶ 3. | ██████████████████████ ████ ████████████████████ ████<br><br>Ex. 1, 137:16-23. |
| "Finally, because Defendants appear to be foreign entities whose true identities remain unknown, any monetary judgment may be difficult, if not impossible, to collect." ECF No. 8, at 27. | ████████████████████████ ██████████ ████████████████████ ████ ██████████ ████████████████████ ████ |

14

| | Ex. 2, 118:22-119:11. |

After LG improperly dragged the Ecopure Defendants—known competitors—into this Schedule A case, LG quickly procured a secret TRO on the basis that it did not know who the Ecopure Defendants were and that they were a flight risk. *See* ECF No. 1, at ¶¶ 3, 4; ECF No. 8, at 6; ECF No. 8, Ex. C Skoyles Decl., at ¶ 12. This TRO froze all Amazon assets of the Ecopure Defendants, not just their products at issue. Yet, prior to filing of this action, LG knew who the Ecopure Defendants were, knew who their counsel was, and "definitely" knew that ██████████ ████████████████████. Ex. 1, 137:16–23, 138:9–12, 140:10–13, 145:6–10, 146:20–24; Ex. 2, 54:16-57:11, 69:10–70:5, 104:7–13, 108:3–21, 118:22–119:11, 122:5–124:19, 157:21–158:1. LG's own declarant in support of the TRO (and now the renewed motion) admitted that ████████████████████ Ex. 1 140:10-13, that ████████████████████, *id.* at 210, that ████████████████████, *id.* at 137:16-23, ***and*** that ████████████████ ██████████. *Id.* at 146:20-24.

Unable to deny these facts in view of its witnesses' testimony, LG's latest filing with the Court calls all of this an "████████ but if the Court had been made aware of this "█████ LG would not have been able use the secret Schedule A proceeding to freeze the Ecopure Defendants' accounts. ECF No. 175, at 27 (Emphasis added). At a minimum, LG has now admitted to violating Rule 11 by failing to conduct a reasonable investigation prior to claiming— repeatedly—that it did not know the Ecopure Defendants. But it is far worse than that. LG's exhibits in support of its motion for TRO clearly show that ████████████ ████████████████ and LG's attorney declaration

accompanying the TRO expressly ███████████████████████████. *See* ECF No. 8

Exhibits; ECF No. 8, Ex. C Skoyles Decl. at ¶ 30. But after the Ecopure Defendants discovered

the freeze and reached out to LG's counsel, he claimed not to know the Ecopure Defendants—

despite them ████████████████████████—and withheld the case documents on

that basis. ECF No. 8, Ex. C Skoyles Decl. Even after the Ecopure Defendants made themselves

known, LG again repeated to the Court that it did know the Ecopure Defendants and they were a

flight risk to obtain an extension of the TRO and an *ex parte* preliminary injunction. ECF No., 27

Ex. 1 at 1.

| LG Statement to Court | LG Witness Peter Hansen |
|---|---|
| "If defendants were to learn of these proceedings prematurely, the likely result would be the destruction of relevant documentary evidence and the hiding or transferring of assets to foreign jurisdictions, which would frustrate the purpose of the underlying law and would interfere with this Court's power to grant relief."<br><br>ECF No. 4, at 1. | ████████████████████████<br><br>Ex. 1, 178:20-23. |
| "Without immediate injunctive relief, Defendants may disappear when they learn of the pending case, only to reappear again under a new identity, presenting a new slate of potential defendants by the time this case comes to trial."<br><br>ECF No. 8, at 28. | ████████████████████████ |

4826-0985-9582, v.4

|  | ███████<br>Ex. 2, 119:12-23. |
| --- | --- |

LG did not █████████████████████████████████████

███████████████████████████████ See Ex. 1, 178:20-23 Yet

LG told this Court, *on 24 separate occasions* in its pleadings, Motion for temporary restraining order, and Motion for preliminary injunction, that the Ecopure Defendants were going to "close up shop" and hide as a result of the lawsuit. *See* ECF No. 4, at 1; ECF No 1, at ¶¶ 10, 11, 19-21; ECF No. 8, 1, 2, 7, 12, 27, 28, 30, 32-33, and 36; ECF No. 8, Ex. C Skoyles Decl. at ¶¶ 12, 15-16; and ECF No. 27, at 5, 6. As explained above, mere months before LG filed its "Schedule A," the Ecopure Defendants had respectfully resolved disputes with LG without any "evasion." Ex. 2, 147: 2-4. In both prior disputes, Ecopure's counsel actually ██████████████████████

██████████████████████████████████, *id.* at 105:7-22, and

████████████████████████████████████████████████

███████. *Id.* at 178:18-23. LG had no reason to believe the Ecopure Defendants would run, but told the Court they would anyway so that it could seal the case and get secret *ex parte* relief.

When a court determines whether to levy sanctions for false statements of fact, "[t]he inquiry is an objective one: whether the party should have known his position was groundless." *Portman v. Andrews*, 249 F.R.D. 279, 281 (N.D. Ill. 2007). Here, in view of its own witness deposition testimony, LG and its counsel cannot plausibly claim to have been unaware of the fact that it was familiar with the Ecopure Defendants—or at the very least Ecopure—and had no reason for believing the Ecopure Defendants would run and hide.

**C.  LG continues to falsely claim that Ecopure Products are unsafe**

**LG Statements to Court (completely abandoned on reply)**

█████████████████████████████████████████████

" ECF No. 103, at. 3 (emphasis added).

*Id.* at 5 (emphasis added).

*Id.* at 26 (emphasis added).

Additionally, LG's motions for injunctive relief repeatedly made disparaging statements regarding the safety and certification of the Ecopure Defendants' filters despite Ecopure submitting evidence of its certifications. Indeed, filter safety was the crux of LG's Renewed Motion for injunction, and the Court specifically permitted LG to bring its Renewed Motion to address "harms arising from customers using of the defendants' filters." ECF No. 100, at 8. Despite the publicly available NSF certifications the Ecopure Defendants already provided, LG's Renewed Motion claimed that the Ecopure Defendants' filters are not certified because the model number of the accused filters ("6046**A**") did not literally appear in those certifications. ECF No. 103-1, at 5–6. In what appears to be, at best, studied ignorance, LG and its counsel failed to mention that those NSF certifications included a model number ("6046**S**"). The letter 'S' at the end of the model number signifies only that NSF tested the 6046A filter attached to a housing. In other words, the 6046**S** model number listed in the NSF certifications ***is literally*** the accused 6046A filter, just attached to a housing.

To remove any question on this issue, after LG filed its Renewed Motion, the Ecopure Defendants contacted NSF and requested that it clarify that the 6046S model is the 6046A filter. NSF promptly complied and now NSF certification Nos. 42, 53 and 401 (the same ones LG has) as well as the additional certification No. 372, all clearly list model number "6046A" as certified.

18

ECF 103, Ex. 8-11 (highlights added). The Ecopure Defendants informed LG and the Court of this update in its Opposition to LG's renewed motion.

So, when the evidence became too much to bear—that the Ecopure Defendants' filters were certified and safe—did LG and its counsel drop the motion or even tell the Court that the basis for its Renewed Motion was wrong? No. Instead, LG's reply just completely dropped the issue of safety, which was the entire reason it refiled the motion in the first place. There is no discussion of the issue in the reply. ECF No. 175. LG should not have stated in its Renewed PI that the Ecopure Defendants' filters were not certified and at very least, LG should have withdrawn its Renewed Motion as to the Ecopure Defendants when further evidence erased all doubt on the issue. LG's persistence in its baseless Renewed Motion warrants dismissal of the motion and an award of reasonable fees incurred in defending against it.

### D.  Sanctions are warranted for violating Rule 11

For six months now, LG and its counsel have forced the Court and the Ecopure Defendants to spend considerable time, effort, and expense responding to Schedule A proceedings, multiple motions for injunctive relief, and rapid-fire discovery premised on misrepresentations. Making matters worse, LG and its counsel have not only failed to thoughtfully reassess its case when presented with facts and evidence, but it has repeated allegations it knows to be untrue to stubbornly pursue the injunction is has been denied several times. As this Circuit has held, dismissal is appropriate where there is "a clear record of delay or contumacious conduct." *Schilling*, 805 F.2d at 275. Accordingly, the Ecopure Defendants respectfully ask that the Court find that LG has violated Rule 11, find that the appropriate sanction is to dismiss the case against the Ecopure Defendants with prejudice and to award the Ecopure Defendants their fees and expenses for these proceedings. Should the Court believe a lesser sanction is appropriate, the Ecopure Defendants respectfully request that the sanction

address, at a minimum, the aspects of this case that LG has already conceded as well as the costs the Ecopure Defendants have incurred as an improperly joined and enjoined party. This includes dismissal without prejudice for improper joinder under §299 (as LG conceded), denial of the pending renewed motion for preliminary injunction, and the Ecopure Defendants legal fees relating to the Schedule A proceedings to date.

## V.     CONCLUSION

For the reasons set forth herein and in the accompanying Motion, the Ecopure Defendants respectfully request that this Court grant their motion and sanction LG and its counsel by (1) denying LG's Renewed Motion for Entry of Preliminary Injunction; (2) dismissing the case and granting Defendants their reasonable fees and costs incurred as a result of LG and its counsel continuing to advocate unsupported claims it knew had no merit including the briefing necessary to dissolve the *ex parte* TRO and preliminary injunction, the motion to sever and the briefing and related discovery in response to the Renewed PI; and (3) awarding any other relief the Court deems appropriate.

4826-0985-9582, v.4

Date: November 11, 2021

Respectfully Submitted,
/s/ *Todd R. Tucker*
Steven P. Mandell (ARDC #6183729)
smandell@mandellmenkes.com

MANDELL MENKES LLC
1 North Franklin Street, Suite 3600
Chicago, IL 60606
(312) 251-1001 (Telephone)
(312) 251-1010 (Facsimile)

Todd R. Tucker (0065617) (*pro hac vice*)
ttucker@calfee.com
Joshua M. Ryland (0071758) (*pro hac vice*)
jryland@calfee.com
Yizhou (Brad) Liu (0093842)
bliu@calfee.com
Ashley J. Earle (0093664) (*pro hac vice*)
aearle@calfee.com
Joshua A. Friedman (0091049) (*pro hac vice*)
jfriedman@calfee.com

CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 E. 6th Street
Cleveland, Ohio 44114
(216) 622-8200 (Telephone)
(216-241-0816 (Facsimile)

***Attorneys for Defendants Qingdao Ecopure Filter Co., Ltd., Qingdao Maxwell Commercial and Trading Company Ltd., and QingdaoYouniwei Trading Co., Ltd.***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a copy of the foregoing was served via electronic mail and via United States Postal Service upon Plaintiff's attorneys of record on this 11th day of November 2021.

*/s/ Todd R. Tucker*

*Attorney of Record for Defendant*

22